IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ) | | |
| ex rel. KYLE FELLHOELTER, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| ) | | |
| v. ) | No. 3:05-CV-343 | |
| ) | | |
| VALLEY MILK PRODUCTS, L.L.C., ) | | |
| *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |

## **MEMORANDUM OPINION**

This civil action is before the court for consideration of two motions to dismiss. Defendants, Valley Milk Products, L.L.C. ("Valley Milk") and Donald C. Utz ("Utz") have filed a motion to dismiss [doc. 44]. Relator Kyle Fellhoelter ("Fellhoelter") has responded [doc. 82]. The United States has submitted a statement of interest in response to the motion to dismiss [doc. 84]. Valley Milk and Utz have filed a consolidated reply to the United States's statement of interest and Fellhoelter's response [doc. 90], and Fellhoelter has filed a sur-reply to Valley Milk's consolidated reply [doc. 96].

Defendant Maryland & Virginia Milk Producers Cooperative Association, Inc. ("Maryland & Virginia") has filed a "Renewed Motion to Dismiss" [doc. 47].[1] Fellhoelter has filed a response [doc. 71], and the United States has submitted a statement of interest in

---

[1] Maryland & Virginia's original motion to dismiss [doc. 4] was denied with leave to renew as it was filed before the government determined whether or not it would intervene [doc. 8].

response [doc. 70]. Maryland & Virginia has filed a reply to the United States's statement of interest and Fellhoelter's response [doc. 80].

The court has decided that oral argument is unnecessary, and the motions are ripe for the court's consideration. For the reasons stated herein, both motions will be granted, and this case will be dismissed.

I.

*Background*

Procedural

This case is brought under the False Claims Act, 31 U.S.C. §§ 3729, *et seq*. ("FCA"). The original complaint was filed July 8, 2005, and an amended complaint was filed, which is the complaint before the court [doc. 36]. The original and amended complaints included the U.S. Department of Agriculture ("USDA") as a defendant, with allegations by Fellhoelter as an individual plaintiff against the USDA, his employer, based on the Whistleblower Protection Act, 5 U.S.C. § 1221. Fellhoelter later voluntarily dismissed those claims [doc. 56]. Therefore, the case is now proceeding solely as a *qui tam* action.

Although the complaint was filed under seal as required by 31 U.S.C. § 3730(b)(2), Fellhoelter immediately served all the defendants with copies of the complaint. Section 3730(b)(2) requires that the complaint not be served on the defendants until ordered by the court. Nevertheless, the court sealed the matter and allowed the government time to

2

decide whether or not it would intervene. The government chose not to intervene in this case [docs. 22, 30].

Factual

At the time of filing the original complaint, Fellhoelter was the Field Office Supervisor for the Knoxville office of the Milk Market Administrator for the USDA.[2] His duties included supervising a staff of auditors who conducted audits of milk processing plants in the Appalachian region.

The regulation and operation of the milk industry is extremely complex and the various details are beyond the scope of the issues before the court. For the purposes of the discussion herein, what is important is that the USDA has a regulatory scheme referred to as the "Appalachian Federal Order" that addresses shortages of Class 1 milk and payments to farmers who deliver Class 2, 3, or 4 milk that come from an industry funded program. According to the amended complaint, the USDA acts as an agent to "pass through" fund money from a paying processing plant to a receiving plant. All of the money in the program is money paid by the participating processing plants. The parties do not dispute that no government money is being distributed to the plants or deposited in the fund.

Fellhoelter alleges three fraudulent schemes that he contends Valley Milk and/or Maryland & Virginia engaged in to violate the FCA. The first scheme involves Valley

---

[2] At the hearing on the request for injunctive relief, Fellhoelter indicated that he is no longer employed by the USDA.

Milk. Fellhoelter avers that Valley Milk failed to pay farmers the "blend" or "uniform" price or a "minimum order value" in violation of 7 U.S.C. § 608c(5)(A). The amended complaint alleges:

> Every plant that participates in the program pays at least the uniform price for milk it receives. If the plant produces Class 1 milk, which is fluid milk, the plant pays money into a fund that is managed by the USDA known as the "Settlement Fund."
>
> Valley Milk received shipments of raw milk but paid $1.00-$1.50/hundredweight less than the blend price to which the farmers were entitled. Because Valley Milk paid lower than blend price, Valley Milk received approximately $500,000.00 to which the company was not entitled.
>
> Valley then received a check out of the Settlement Fund for the difference between the classified price (reflecting what the milk was used for) and what they were supposed to pay (but did not pay) the farmer.
>
> By this scheme, Valley improperly profited due to (a) receipt of payments from the Settlement Fund and (b) by getting raw milk from two suppliers at an illegally reduced price.

In the second scheme, Fellhoelter contends that Valley Milk acquired the right to become a "pool plant" under the Appalachian Order with qualifying milk that was allegedly supplied by two of its competitors. The complaint also alleges that Maryland & Virginia was given credit for supplying milk that was actually supplied by other milk cooperatives and by doing so received certain legal rights that should have been given to the other milk cooperatives. The amended complaint states:

4

> . . . First, the Cooperative was allowed to divert some of its non-fluid milk to the more profitable Appalachian Order. Second, with these credits, the Cooperative was able to get its sister company, Valley Milk, recognized as having the right to become a supply plant to the Appalachian Order.
>
> These credits gave Valley Milk and Maryland Virginia an unfair advantage over their competitors.
>
> Furthermore, because Valley Milk was qualified as a supply plant under the Appalachian Order, the other farmers who supply milk under the Appalachian Order had the price they received for their milk reduced, because the other farmers' milk was "pooled" with Valley's milk, and Valley's milk was used in "lower value" (i.e. Class 2 and Class 4) products.

The third fraudulent scheme involves allegations that Valley Milk processed milk that did not meet standards for Grade "A" milk as enforced by the State of Virginia and was not fit for human consumption. The amended complaint alleges:

> Because Valley Milk was not processing Grade A milk, under USDA regulations, the company was illegally participating in the program established by the AMA and FO-5 [Appalachian Order].
>
> As a result of this misuse of the milk that Valley received, farmers belonging to the Maryland-Virginia Cooperative and Mr. Utz received in excess of Thirty Million Dollars ($30,000,000) in payments for Class 2 and Class 4 milk that they should not have received because the milk they received was not of the grade to receive those payments.
>
> Also as a result of this fraud, milk that is not fit for human consumption was processed and shipped to manufacturers of milk-based products specifically intended for human consumption. . . .

5

II.

*Standard of Review*

Both motions to dismiss are brought pursuant to Federal Rule of Civil Procedure 12(b)(6). "Motions to dismiss under Rule 12(b)(6) are designed to test 'whether a cognizable claim has been pleaded in the complaint.'" *Fed. Express Corp. v. U.S. Postal Serv.*, 40 F. Supp. 2d 943, 947 (W.D.Tenn. 1999) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). "To survive a motion to dismiss under Rule 12(b)(6), 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (quoting *Scheid*, 859 F2d. at 436). When reviewing a motion for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations in the complaint as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). However, the court does not have to accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

III.

*Analysis*

<u>Violation of the Sealing Provisions</u>

Both Valley Milk and Maryland & Virginia argue that the case should be dismissed because Fellhoelter violated the sealing provisions of the FCA, 31 U.S.C. § 3730(b)(2), which provides as follows:

> A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. **The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.** The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(2) (emphasis added).

As referenced above, when this action was commenced, Fellhoelter moved to have the complaint sealed. However, he immediately served all the defendants with copies of the complaint. This was clearly a violation of the statute, and the question is whether that violation mandates dismissal of this *qui tam* action.

In support of their motion, Valley Milk and Maryland & Virginia rely on several cases from other jurisdictions. For example, in *United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242 (9th Cir. 1995), the Ninth Circuit set out factors that need to be considered and balanced by the district court in determining whether a violation of the

sealing provisions requires dismissal. One of those factors is whether the government has been harmed. *Id*. at 245-47. The Second Circuit in *United States ex rel. Pilon v. Martin Marietta Corp*., 60 F.3d 995, 998-99 (2d Cir. 1995) identified specific reasons Congress created the statutory sealing requirements. The court determined that the violation in that case "incurably frustrated the statutory purposes underlying these requirements[.]" *Id*. at 996.

However, the court prefers to apply the approach followed by Judge Edgar of this court in *Blenstroub v. Harris Tube Pulling & Manufacturing, Inc. Harris Tube* was a *qui tam* action in which the relator failed to file the complaint under seal in violation of 31 U.S.C. § 3730(b)(2), and the question before the court was whether that statutory violation warranted dismissal of the relator's *qui tam* action. The defendants had relied on *Erickson v. American Institute of Biological Sciences*, 716 F. Supp. 908 (E.D. Va. 1989), also a case in which the relator had failed to file a *qui tam* complaint under seal.

Judge Edgar discussed and distinguished the *Erickson* case and quoted at length the portion of the opinion in which the *Erickson* court discussed how the failure to comply with the sealing provisions frustrated the congressional goals underlying those provisions. Judge Edgar then went on to hold:

> In any event, this court does not believe the present motion to dismiss should be decided through an analysis of whether the congressional goals underlying the statute have been frustrated. Instead, it is the opinion of this court that dismissal of the Relator's qui tam action is required because compliance with the mandatory filing requirements of the statute is essential to the assertion of the statutory right. The Relator's right to bring a qui tam action and recover a portion of the damages allegedly due

8

> the Government is a right created solely by statute. The Relator lost the right to bring this statutory cause of action when he violated the filing requirements of the statute.

*Blenstroub v. Harris Tube Pulling & Mfg., Inc.*, No. Civ-1-89-560, slip op. at 5 (E.D. Tenn. Oct. 13, 1992).

This reasoning applies with equal force in this case. It is of no consequence that in *Harris Tube* the statutory violation was that the complaint was not filed under seal while in this case the complaint was filed under seal but the defendants were served with copies of the complaint. The significant fact is that in both cases the mandatory sealing provisions of the statute were violated. By violating the mandatory statutory requirements, Fellhoelter lost his right to bring this statutory cause of action. Therefore, on this basis, the case will be dismissed.

## Failure to State a Claim Under the FCA

However, even if Fellhoelter had not violated the sealing provisions, the court would still be inclined to dismiss this case for failure to state a claim under the FCA. Therefore, the court will proceed to analyze the allegations of the amended complaint in light of the liability provisions of the FCA.

Fellhoelter does not identify what section or sections of the FCA upon which he bases his cause of action. This omission has unduly complicated the briefing and frustrated the court's analysis as well. The entire FCA claim, identified as count two in the

9

amended complaint, states as follows:

> By the acts and omissions described in this Complaint, the Defendants, Valley Milk, Don Utz, and Maryland-Virginia Milk Producer's Cooperative have violated the False Claims Act in that they have knowingly submitted claims for payments and/or benefits in excess of Forty Million dollars ($40,000,000.00) to an agency of the U.S. Government, when they know that they are not entitled to these monies.
>
> For these acts and omissions, the Defendants are jointly and severally liable for treble damages in at least the sum of one hundred twenty million dollars (120,000,000.00).

Presumably, Fellhoelter thus contends that the fraudulent schemes described in the complaint involve "claims for payments and/or benefits" "knowingly submitted" by the defendants that have violated the FCA.

The FCA provides in pertinent part as follows:

(a) Liability for certain acts. Any person [is liable to the government] who

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . . .

31 U.S.C. § 3729(a). [3]

---

[3] No party has argued that subsections (4), (5), and (6) of § 3729(a) have any application in this case, and the court has determined that they have no relevance. Therefore, the court will only analyze whether the amended complaint states a claim under the FCA based on the provisions referenced in the pending motions.

The FCA defines "claim" as follows:

> For purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

**Subsections (a)(1), (2), and (3)**

All three of these subsections involve liability for claims under the FCA. Subsection (a)(1) involves knowingly presenting a false or fraudulent claim. Subsection (a)(2) requires making or using a "false record or statement" "in order to induce the government to pay or approve a claim." *United States ex rel. Thacker v. Allison Engine Co., Inc.*, 471 F.3d 610, 615 (6th Cir. 2006). Subsection (a)(3) "requires a conspiracy to defraud the government to pay or allow a false claim." *Id.*

One basis of dismissal that the defendants argue is that this FCA action fails because there is no claim made against the government fisc. Defendants contend that there is no government money involved in any of these alleged fraudulent schemes, so there is no claim made against the government fisc and no potential or possible loss to the government, a necessary element in an FCA case. There is no dispute that the Settlement Fund in this case is solely funded by milk industry participants. While maintained by the government, the fund is not contributed to nor subsidized by government funds.

In response to this argument, Fellhoelter basically argues that the FCA covers all attempts to cause the government to pay out sums of money citing *Allison Engine* and *United States v. Neifert-White*, 390 U.S. 228 (1968). His contention is that the acts of the defendants have caused the government to authorize larger payments from the Settlement Fund than were justified, and because the funds were through a government-administered program, the FCA has been violated. In its statement of interest, the government addresses this issue by making a number of arguments in support of its position that non-appropriated funds are subject to the FCA. Thus, the government agrees with Fellhoelter that even though the funds in this case are not government funds and even though no claim is made for payment from the government fisc, this case falls under the FCA.

"While 'recovery under the [False Claims Act] is not dependent upon the government's sustaining monetary damages[,]' *Varljen v. Cleveland Gear Co.,* 250 F.3d 426, 429 (6th Cir. 2001), the Act is only intended to cover instances of fraud 'that might result in financial loss to the Government.'" *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 183 (3rd Cir. 2001) (quoting *United States v. Neifert-White*, 390 U.S. 228, 232 (1968)). Fellhoelter's argument is too broad and incomplete. While the FCA is designed to reach all fraudulent attempts that cause the government to pay money, the source of the money subject to the pay out needs to be identified. An examination of the intent of the FCA and relevant case law indicates that it is government money that is at issue and that is designed to be protected by the FCA. In *Neifert-White*, government money was at issue because the false

invoices used to support applications to the Commodity Credit Corporation for loans to farmers were made to a government agency; hence, there was the potential for monetary loss to the government fisc. In *Allison Engine*, subcontracts involving electrical systems in Navy destroyers were involved, so the case involved classic government recent contracts and FCA circumstances. The authorities Fellhoelter cites do not advance his position.

In support of its contention that the FCA reaches non-appropriated funds, the government relies on *United States ex rel. Sequoia Orange Co. v. Oxnard Lemon Co.*, Nos. CV-F-91-194 through 197 OWW, 1992 WL 795477 (E.D. Cal. May 4, 1992). In *Sequoia Orange*, the district court found that a lemon marketing order that is similar to the Settlement Fund in this case was subject to the FCA. However, the provision of the FCA that was at issue was subsection (a)(7) that deals with reverse false claim actions.[4] The case does not advance the position that a traditional FCA claim brought pursuant to subsections (a)(1),(2), or (3) can be sustained if it does not involve or potentially put at risk government funds. In addition, as will be discussed below when the court addresses subsection (a)(7), the expansive approach taken by the court in *Sequoia Orange* was rejected by the Sixth Circuit in *American Textile Manufacturers Institute, Inc. v. The Limited, Inc.*, 190 F.3d. 729 (6th Cir. 1999).

The government also argues that the Sixth Circuit's recent decision in *Allison Engine* does not support the proposition that the federal fisc must be implicated for an action

---

[4] The plaintiff's claims based on subsections (a)(1) and (2) were dismissed by the district court. *Sequoia Orange*, at *4.

to be viable under the FCA. The court does not agree. In *Allison Engine*, 471 F.3d 610, the Sixth Circuit did not have before it the issue presently before this court. The main issue was whether or not a claim must be actually presented to the government under subsections (2) and (3) to be actionable. However, the legislative history cited in the opinion assists in our analysis by giving insight into the intent of the FCA to cover fraud that reaches or involves government funds. The Sixth Circuit stated as follows:

> The committee reports written when Congress restructured § 3729 in 1986, breaking section (a) into subsections and adding subsection (c), indicate that Congress intended to broaden the reach of the FCA to cover fraudulent claims submitted by subcontractors that result in loss to the government. The purpose of the 1986 change was "to enhance the Government's ability to recover losses sustained as a result of fraud . . . ." S.Rep. No. 99-435, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5266. . . . The [Senate] Report clearly states that the FCA "is intended to reach all fraudulent attempts **to cause the Government to pay out sums of money**." *Id*. at 5274. "[A] false claim is actionable although the claims or false statements were made to a party other than the Government, **if the payment thereon would ultimately result in a loss to the United States**." *Id*. at 5275. . . . The House Report reached a similar conclusion: "[C]laims or false statements made to a party other than the Government are covered by this term **if the payment thereon would ultimately result in a loss to the United States**." H.R.Rep. No. 99-660, at 21 (1986).

*Id*. at 615 (emphasis added). After citing this legislative history, the Court noted that "the statute covers false claims made to parties other than the government **so long as the claim will be paid with government funds**." *Id*. (emphasis added).

The Court's holding in *Allison Engine* also sheds light on the issue herein. The Sixth Circuit held:

> We hold that while liability under § 3729(a)(1) turns on whether a claim has been presented to the government, subsections (a)(2) and (a)(3) do not require such a showing. Rather, a relator under these two subsections **must show that government money was used to pay the false or fraudulent claim. This requirement comports with the policy rationale behind the FCA-protecting the government fisc-while ensuring that the statute applies only to claims submitted to the government and not to private entities**.

*Id*. at 622 (emphasis added).[5] The court believes that *Allison Engine* supports the position that the purpose of the FCA is to protect the government fisc and that it is designed to redress activity that attempts to cause or actually results in loss to the government. Therefore, claims that do not reach or ultimately threaten to reach the government fisc should not and cannot be subject to the FCA.

The alleged "claims" in this case do not reach or threaten to reach government funds. The money Valley Milk has allegedly received by paying less than the blend price came from the Settlement Fund, money provided solely by milk producers. There is no allegation that money from the federal fisc is involved in this alleged fraud. The second fraud deals with Valley Milk and Maryland & Virginia obtaining legal rights they should not have received and obtained unfair advantages over their competitors. This alleged fraud,

---

[5] In a footnote the Court addressed the dissent's observation that there is no authority for the payment requirement to establish a violation of subsection (a)(2). *Allison Engine*, 471 F.3d at 617 n.5. The Court concluded it was an issue of first impression.

however, also has no allegation or showing that government funds have been claimed or paid or placed at risk. The same is true for the third alleged fraud involving the sale of contaminated milk. There is no allegation that government funds have been claimed or paid or placed at risk because of the alleged sale of the non-Grade A milk. The court concludes that these alleged frauds are not claims against the government fisc as required by the FCA. Therefore, Fellhoelter has not stated a claim under subsections (a)(1), (2), or (3) of the FCA.

### Subsection (a)(7)

Again, this subsection was not referenced in the complaint. However, because it was mentioned and argued in the pending motions, the court will address it. Subsection (a)(7) deals with "reverse false claims" and states that any person is liable to the government who:

> knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government . . . .

31 U.S.C. § 3729(a)(7). "Th[is] provision gives the United States a means to recover from someone who makes a material misrepresentation to avoid paying some obligation owed to the government." *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 772 (8th Cir. 1997) (citing S.Rep. No. 99-345, at 15, 18 (1986), *reprinted in* 1986 *U.S.C.C.A.N.* 5266, 5280, 5283).

The Sixth Circuit addressed this provision in *American Textile Manufacturers Institute, Inc. v. The Limited, Inc.*, 190 F.3d 729 (6th Cir. 1999). In *American Textile*, a trade

association of textile and apparel manufacturers brought a *qui tam* action against several defendants alleging that they had submitted false claims to the government to avoid paying fines, duties, and liquidated damages for illegal transshipments of textiles. The complaint alleged that the defendants violated customs laws and implementing regulations. The FCA action was brought pursuant to subsection (a)(7).

The Sixth Circuit stated, "As a preliminary matter, we note that, whatever the scope of the phrase 'obligation to pay or transmit money or property to the Government,' 31 U.S.C. § 3729(a)(7), a plaintiff may not state a reverse claim unless the pertinent obligation attached *before* the defendant made or used the false record or statement." *Id*. at 734 (emphasis in original). The Court went on to analyze and adopt the restrictive approach taken by the Eighth Circuit in its interpretation of subsection (a)(7) in *Q International*, 131 F.3d 770. The Eighth Circuit held in that case regarding § 3729(a)(7) as follows:

> To recover under the False Claims Act, we believe that the United States must demonstrate that it was owed a specific, legal obligation at the time that the alleged false record or statement was made, used, or caused to be made or used. The obligation cannot be merely a potential liability: instead, in order to be subject to the penalties of the False Claims Act, a defendant must have had a present duty to pay money or property that was created by a statute, regulation, contract, judgment, or acknowledgment of indebtedness.

*Id*. at 773.

The Sixth Circuit went on to hold in *American Textile*:

> We agree with the reasoning of the Eighth Circuit. Thus, we hold that a reverse false claim action cannot proceed without proof that the

17

> defendant made a false record or statement at a time that the defendant owed to the government an obligation sufficiently certain to give rise to an action of debt at common law. Whatever its scope, the False Claims Act clearly encompasses specific and legal duties to pay or transmit money or property to the government. A defendant risks liability when making false statement to conceal, avoid or decrease obligations such as his prior acknowledgment of indebtedness, a final court or administrative judgment that the defendant owes money or property to the government, or a contractual duty to pay or transmit money or property to the government.

*American Textile*, 190 F.3d at 736.

As mentioned earlier, in a case relied upon by the government here, *United States ex rel. Sequoia Orange Co. v. Oxnard Lemon Co.*, Nos. CV-F-91-194 through 197 OWW, 1992 WL 795477 (E.D. Cal. May 4, 1992), the district court allowed contingent obligations or "potential claims" to fall within subsection (a)(7). *Id*. at *8. The district court stated, "Defendants are claimed to have covered up potential claims by submitting false shipping reports. Had the Government successfully prosecuted defendants for the violations, the United States Treasury would have been enhanced through the payment of the appropriate fines and forfeitures." *Id.* The Sixth Circuit specifically rejected the expansive approach allowed in *Sequoia Orange*. *American Textile*, 190 F.3d at 740. Rather, the Sixth Circuit took the position that "[c]ontingent obligations – those that will arise only after the exercise of discretion by government actors – are not contemplated by the statute." *Id*. at 738.

Fellhoelter has not stated a claim under subsection (a)(7). There are no allegations that defendants made a false record or statement at the time they owed a

sufficiently certain obligation to the government. While there are some allegations in the amended complaint regarding violations of statutes and regulations, they fail to encompass the necessary assertions for a reverse false claims action as set out by the Sixth Circuit in *American Textile*. The facts as alleged in the amended complaint do not state a claim under subsection (a)(7).

For these reasons, the court concludes that Fellhoelter has not stated a claim under any relevant provision of the FCA, and on that basis his *qui tam* action will be dismissed. Defendants have raised other bases for dismissal; however, the court does not need to reach them.

Accordingly, the defendants' motions to dismiss will be granted. This *qui tam* action will be dismissed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge